**AMERICAN TRUCKING ASSOCIATIONS, INC., et al.**

v.

**William O'NEILL, et al.**

**Civ. No. H–81–267.**

United States District Court,
D. Connecticut.

May 1, 1981.

Ruling On Motion For Preliminary
Injunction May 6, 1981.

Stephen I. Traub, Dennis Marlowe, Stephen Errante, Lynch, Traub, Keefe & Marlowe, New Haven, Conn., for plaintiffs.

Richard Greenberg, Paul Scimonelli, Asst. Attys. Gen., Carl Ajello, Atty. Gen., State of Connecticut, Hartford, Conn., for defendants.

CLARIE, Chief Judge.

This Court has jurisdiction in this case pursuant to 28 U.S.C. § 1331.

The Court finds that the proposed registration fee increment demanded of the plaintiffs would, if enforced, constitute imminent and irreparable harm to the plaintiffs. Further, there is a basis for genuine doubt in the laws and decisional authority of the State of Connecticut as to the existence of an adequate remedy in law or equity to secure to the plaintiffs and members of the proposed plaintiff class a full refund of any monies paid by them to the defendant Dubno pursuant to this demand under Connecticut Public Act 81–14. It is this

inadequacy of remedy which excepts this Court from the strictures of 28 U.S.C. § 1341. There is a substantial likelihood that the effect of Public Act 81–14 renders Connecticut General Statutes § 12–487 unconstitutional as violative of the commerce clause.

THEREFORE, it is hereby ordered, as follows:

1. The defendant Dubno is hereby enjoined and restrained from demanding or accepting payment of any motor carrier registration fees as required by Conn.Gen. Stat. § 12–487, as amended by Public Act 81–14, *except*, that defendant Dubno may accept and process applications for 1981 motor carrier registration decals from or with respect to motor carrier vehicles not previously registered under Conn.Gen.Stat. § 12–487 for operation in Connecticut during 1981 upon payment of a fee of not more than Five Dollars ($5.00), advising each applicant at or before the time any such decals are issued of their possible liability for additional fees pursuant to Public Act 81–14 and further orders of this Court pertaining thereto.

2. The defendant Dubno is hereby enjoined and restrained from negotiating any instruments of payment of the registration fee called for by Public Act 81–14 and from disbursing or releasing to any person or instrumentality any monies which may already be or may hereafter come into his possession by virtue of payment under that statute, except upon subsequent order and direction of this Court. Defendant Dubno may, at his discretion, return any instruments of payment, or monies already received to the payor of such instruments or monies pending a final determination of these proceedings, or subsequent orders of this Court.

3. The defendant Dubno is hereby enjoined and restrained from sending or distributing any registration decals prepared for distribution pursuant to Public Act 81–14 and signifying payment of the fee required thereby pending a final determination of these proceedings, or subsequent orders of this Court. As provided in Paragraph 1 of this Order, defendant Dubno may issue registration decals to motor carriers whose vehicles, or some of which, have not previously been registered under Conn. Gen.Stat. § 12–487 for operation in Connecticut during 1981.

4. Defendants O'Neill, Dubno, Muzio and Long are hereby enjoined and restrained from undertaking or pursuing any actions to enforce the registration requirements of Conn.Gen.Stat. § 12–487, as amended by Public Act 81–14 pending a final determination of these proceedings or subsequent orders of this Court. This Order shall not be construed to prevent defendants O'Neill, Dubno, Muzio and Long, from enforcing the decal registration provisions of Conn.Gen.Stat. § 12–487, or the penalty provisions of Conn.Gen.Stat. § 12–492 as to any motor carrier vehicle operating within Connecticut without displaying a previously issued 1981 registration decal, or such a decal issued hereafter pursuant to Paragraphs 1 and 3 of this Order.

5. Plaintiffs shall provide security against the wrongful or erroneous entry of this Order by filing forthwith a bond in the amount of TWO HUNDRED FIFTY THOUSAND DOLLARS ($250,000) with the Clerk of this Court for such costs and damages as may be incurred or suffered by the defendants if they are found to have been wrongfully restrained. This Order shall not become effective or be deemed of force and effect until the plaintiffs shall have filed said bond.

A full hearing on the merits of the plaintiffs' request for declaratory relief will be held on June 1, 1981.

Service of the foregoing shall be made on all parties hereto and due return made to the Court.

SO ORDERED.

### RULING ON MOTION FOR PRELIMINARY INJUNCTION

The plaintiffs are requesting the Court to grant declaratory and injunctive relief, based upon a proposed finding that the amendment to § 12–487 of the Connecticut

General Statutes, Public Act 81–14, is unconstitutional. The defendants assert that such injunctive relief is barred in this case, because the Tax Injunction Act, 28 U.S.C. § 1341, forbids the district courts from enjoining the collection of state taxes unless the state does not provide "a plain, speedy and efficient remedy." This Court issued a finding on May 1, 1981, that Connecticut General Statutes § 12–487 is, in its present form, a tax and not a fee. Nevertheless the Court found that injunctive relief was available here, because the state remedy afforded is speculative and inadequate, there is a risk of irreparable harm to the plaintiffs, and the factual circumstances indicate that the latter are likely to succeed ultimately on the merits. Accordingly a preliminary injunction was ordered, subject to the plaintiffs' posting a Two Hundred Fifty Thousand Dollar bond, to protect the state against any possible loss.

### Jurisdiction

The Court has jurisdiction in this case pursuant to 28 U.S.C. §§ 1331, 1332, 1337; 49 U.S.C. § 11503a(c).

### Facts

The plaintiff American Trucking Associations, Inc. (ATA) represents some ten thousand motor carrier companies. The ATA, and plaintiff Ryder Truck Lines, Inc. (Ryder), participate in the operation of approximately two hundred and forty-three thousand motor carrier vehicles, all of which are subject to the requirements of the challenged statute, Connecticut General Statutes § 12–487, as amended.

Chapter 222 of the Connecticut General Statutes, titled the Motor Carrier Road Tax, is administered so as to impose an eleven cent per gallon tax on those interstate motor carriers that purchase gasoline or diesel fuel in other states but use it during their driving operations in Connecticut. The successful administration of this tax structure depends upon the annual registration, in Connecticut, of all interstate motor carriers which will operate in the state. Section 12–487 details the registration procedure. All such registered vehicles are required to submit quarterly reports, which detail their mileage in Connecticut and which compute the tax thereupon owed.

On March 27, 1981, Connecticut Public Act 81–14 amended Connecticut General Statute § 12–487 so as to raise the annual registration fee from five dollars to forty dollars per vehicle. This amendment also imposes a retroactive incremental fee of thirty-five dollars on those carriers who had previously registered their vehicles, under the old five dollar fee, for the calendar year 1981. These additional fees were due on or before April 30, 1981.

The plaintiffs seek injunctive and declaratory relief, alleging that Section 12–487, in its present form, violates a number of state and federal statutory provisions. These violations, claim the plaintiffs, lead to the plaintiffs' deprivation of constitutional rights of due process. They also allege several independent violations of constitutional provisions, such as the commerce, supremacy, and privileges and immunities clauses. The Court found, on May 1, 1981, that a preliminary injunction should issue, and an appropriate order was entered.

### Discussion of the Law

#### I. The Application of 28 U.S.C. § 1341

The defendants claim that injunctive relief is not available in this case, due to the Tax Injunction Act, 28 U.S.C. § 1341. That section provides that "the district courts shall not enjoin . . . the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." The threshold question is whether Connecticut General Statutes § 12–487, as amended by Connecticut Public Act 81–14, imposes a "tax" or a "fee," for the purposes of 28 U.S.C. § 1341, on interstate motor carriers.

The plaintiffs argue that the original statutory Section 12–487 imposed a fee, and cite four points in support of that position: (1) the purpose of the section was merely to register vehicles; (2) the new act is titled

"An Act Concerning The Annual Registration Fee for Vehicles Operated By Motor Carriers"; (3) the proceeds derived from this section were reasonably proportioned to the costs of administration; (4) this statute provided for a means of collecting a tax and so is only incident to the administration of a taxing statute. The defendants respond that Section 12–487 is in fact a tax, because the proceeds are deposited in the general fund, thus marking this section as a revenue-raising device.

The issue thus raised may be decided by reference to certain well-settled principles. Taxes have been defined as "only those levies made to raise revenue for general governmental purposes .... Other courts have defined "tax" more broadly, indicating that the term embraces any extraction of property from a private person by a sovereign for its use ...." *Tramel v. Schrader*, 505 F.2d 1310, 1314–15 (5th Cir. 1975). *See also United States v. Wyoming*, 402 F.Supp. 229, 231 (D.Wyo.1975) (a purported "fee" was held to be a tax, largely because it was "designed to raise revenue rather than merely cover the costs of administration of motor vehicles registration"). Those courts which have directly compared the terms "fees" and "taxes" have used a common formula. "A tax is one whose primary purpose is to obtain revenue, while a license fee is one made primarily for regulation and whatever fee is provided is to cover the cost and the expense of supervision or regulation." *State v. Jackman*, 60 Wis.2d 700, 211 N.W.2d 480 (1973). *See Valandra v. Viedt*, 259 N.W.2d 510 (S.D.1977). *See also Robinson Protective Alarm Co. v. City of Philadelphia*, 581 F.2d 371, 376 (3d Cir. 1978) (an ordinance was held to be a revenue-raising measure because the monies collected were added to the public fisc, rather than applied exclusively to the activity regulated by the ordinance).

The inquiry should begin from the expressed intention of the legislature, "as found from the words employed to make it manifest." *Doe v. Institute of Living, Inc.*, 175 Conn. 49, 57, 392 A.2d 491 (1978). It is from this principle that the plaintiffs make their claim that the words "fee" and "registration" in Public Act 81–14 identify it as something other than a tax. However, the Court must examine the amendment, Public Act 81–14, in light of the federal Tax Injunction Act. The term "tax under state law" in 28 U.S.C. § 1341 "should be determined as a matter of federal law by reference to the congressional policies underlying the Tax Injunction Act, rather than by adoption of state tax labels developed in entirely different legal contexts." *Robinson Protective Alarm Co. v. City of Philadelphia*, 581 F.2d 371, 374 (3d Cir. 1978). *Cf. Connecticut Light & Power Co. v. Walsh*, 134 Conn. 295, 309–10, 57 A.2d 128 (1948) (a distinction between "license" and "tax" was drawn for the limited purpose of defining the phrase "license tax").

The plaintiffs' other arguments, which look to the original purpose of Section 12–487, must be examined against the *present* operation and apparent purpose of Section 12–487. The ostensible purpose of Section 12–487 appears, from the structure of the statute, to be the registration of interstate motor carriers. The amendment, Public Act 81–14, however, has added to the statute a new dimension and purpose; one which overshadows and enlarges the original law.

When Section 12–487 was first enacted in 1961, the registration fee was one dollar. Conn.Pub. Acts 61–575 § 10. In 1969 this fee rose to three dollars, Conn. Pub. Acts 69–599 § 1, and last year, 1980, the fee was reset at five dollars. Conn.Pub. Acts 80–71 § 24. Now, one year later, the "fee" has been raised to forty dollars. Conn.Pub. Acts 81–14. The Fiscal Note prepared by the Department of Revenue Services states that the operating cost of implementing Public Act 81–14 is approximately ninety thousand dollars. The defendants caution that there may be other, additional costs which are not yet ascertainable, but they conceded at oral argument that the administrative costs do not approach the nearly ten million dollars in rev-

enue anticipated from this amendment.[1] It is clear that, on the evidence before the Court, the primary purpose of Section 12–487, as amended, has become the direct raising of revenue. Certainly the section will continue to serve as a registration device, but that fact cannot disguise the gross disproportion between the charge which is levied and the service which is performed. Second, the moneys collected from this section go not to administration, but rather are deposited in the general fund. Conn.Gen. Stat. §§ 12–490; 13b–61. Finally, this provision has ceased to be incident to a taxing statute; it is now, itself, a taxing statute. The purposes of 28 U.S.C. § 1341 are best served by giving a broad reading to the phrase "tax under State law." *See Rosewell v. LaSalle National Bank*, 450 U.S. 503, 522, 524, 101 S.Ct. 1221, 1233–34, 67 L.Ed.2d 464 (1981). The Court holds, therefore, that Connecticut General Statutes § 12–487, as amended by Connecticut Public Act 81–14, is a taxing statute for purposes of 28 U.S.C. § 1341.

The next level of inquiry is whether injunctive relief may yet be available to the plaintiffs, despite the prohibition of 28 U.S.C. § 1341. The United States Supreme Court has recently addressed the narrow meaning of the "plain, speedy and efficient" exception to 28 U.S.C. § 1341 in the case of *Rosewell v. LaSalle National Bank*, 450 U.S. 503, 101 S.Ct. 1221, 67 L.Ed.2d 464 (1981). The Court set the tone of its inquiry by noting that the principal motivating force behind the Tax Injunction Act was that it was designed "first and foremost [as] a vehicle to limit drastically federal district court jurisdiction to interfere with so important a local concern as the collection of taxes." *Id.* at 522, 101 S.Ct. at 1233. This Court is cognizant of the compelling reasons for avoiding interference with Connecticut's tax structure and will review Section 12–487 from that perspective.

In *Rosewell*, the Supreme Court provided definitions for the terms "plain, speedy, and efficient," but it is clear that, in so doing, the Court did not repudiate those decisions which have addressed the "general meaning of that phrase." *Id.* at 512, 101 S.Ct. at 1228. This "general meaning" is that a state remedy which is not "adequate" is one which is not "plain, speedy and efficient." *See Rosewell* at 512, 513, 514 n.16, 101 S.Ct. at 1228, 1229 n.16. Thus, this Court may rely on those decisions which have outlined the factors that render a state remedy inadequate.

The parties have not cited, and the Court is unable to find, any authority wherein a state remedy was deemed "adequate," unless the statute provided for a right to bring suit in order to recover the payment of a challenged tax. *See Great Lakes Dredge & Dock Co. v. Huffman*, 319 U.S. 293, 301, 63 S.Ct. 1070, 1074, 87 L.Ed. 1407 (1943); *Proctor & Gamble Distributing Co. v. Sherman*, 2 F.2d 165, 166 (2d Cir. 1924). *See also Tully v. Griffin, Inc.*, 429 U.S. 68, 74, 97 S.Ct. 219, 223, 50 L.Ed.2d 227 (1976); *Group Assisting Sewer Proposal-Ansonia v. City of Ansonia*, 448 F.Supp. 45, 47 n.5 (D.Conn.1978); *Lublin v. Brown*, No. 15176 at 6 (D.Conn. Jan. 24, 1973). Case authority reveals that a state remedy cannot be deemed "adequate" unless the state has provided a statutory right to recover tax payments which were wrongfully collected.

The remedies available to the plaintiffs in this action are as follows: Conn.Gen.Stat. § 12–489 "(Any motor carrier aggrieved by an act of the commissioner under the provisions of this chapter may appeal to the superior court . . ."); Conn.Gen.Stat. § 52–29 (this statute empowers the Superior Court to issue declaratory relief); Conn. Gen.Stat. § 4–37 (this statute provides that the comptroller, with the approval of the attorney general, may draw an order in favor of anyone equitably entitled to a re-

---

1. It appears that the legislature was fully aware of this point. "We have here a fee bill, but . . . by any other name, [it] is a tax." Conn. Sen. Debate, 1981 Sess. 527 (Mar. 11, 1981) (re-marks of Sen. Gunther); "And we are here today trying to levy a tax . . . ." *Id.* at 529 (remarks of Sen. Morano).

fund of any money paid to the state. Payments from the general fund "shall be made from the funds appropriated to the comptroller for this purpose.") The latter provision is the only basis whereby the plaintiffs could recover their ten million dollar tax payments, should Section 12–487 prove to be unconstitutional or otherwise unlawful.

■ Connecticut General Statutes § 4–37 provides, at most, an uncertain remedy. The decision to provide a refund under that section is a discretionary one to be made by the comptroller and the attorney general. The defendants have been unable to demonstrate to the Court that, should Section 12–487 be found unconstitutional, taxes wrongfully collected thereunder would be refunded. A Connecticut taxpayer may pay under protest and sue for recovery only where a statute so provides. *Spencer v. Consumers Oil Co., Inc.*, 115 Conn. 554, 562, 162 A. 23 (1932); *John Hancock Mutual Life Insurance Co. v. Allen*, 16 Conn.Supp. 133, 134 (1949). As the plaintiffs have stated, "By no fair construction of Section 4–37 can it be made to appear that a legal or equitable right of action is created which might entitle persons in the hypothesized position of the present plaintiffs to pursue mandatory judicial enforcement of their equitable entitlement." Plaintiffs' Response To Defendants' Supplemental Submission at 2 (Apr. 28, 1981). *Compare* Conn.Gen. Stat. § 4–37 *with* Conn.Gen.Stat. §§ 12–471, –472 (the latter two statutes provide for a statutory right to bring suit to obtain a refund. They further provide the "consent of the state . . . to the institution, maintenance and prosecution of any such suits or proceedings." They do not apply to taxes wrongfully paid under Chapter 222). The Court holds that Section 4–37 is, at best, an uncertain remedy.

■ It is settled that uncertainty surrounding a state remedy will render it speculative and inadequate. *Hillsborough Turnpike v. Cromwell*, 326 U.S. 620, 66 S.Ct. 445, 90 L.Ed. 358 (1946). *See Rosewell v. LaSalle National Bank*, 450 U.S. 503, 517, 101 S.Ct. 1221, 1231, 67 L.Ed.2d 464

(1981); *Robinson Protective Alarm Co. v. City of Philadelphia*, 581 F.2d 371, 376 (3d Cir. 1978); *Garrett v. Bamford*, 538 F.2d 63, 67 (3d Cir. 1976); *Group Assisting Sewer Proposal-Ansonia v. City of Ansonia*, 448 F.Supp. 45, 47 (D.Conn.1978). The Court finds that the laws of Connecticut do not provide an adequate remedy for any taxpayer aggrieved by the wrongful collection of taxes under Conn.Gen.Stat. § 12–487. In the absence of an adequate remedy, this Court is not barred from enjoining the collection of taxes under Section 12–487, as amended by Public Act 81–14. *See* 28 U.S.C. § 1341.

## II. The Availability of Injunctive Relief

The standard to be employed in this case was enunciated by the Court in *Linseman v. World Hockey Association*, 439 F.Supp. 1315 (D.Conn.1977). A preliminary injunction will issue upon a clear showing of "probable success on the merits *and* possible irreparable injury . . . ." *Id.* at 1318 (emphasis in original). The issue of irreparable harm was addressed in the discussion of an adequate remedy, *supra*. The ten million dollars at issue, if paid, could not be recovered by plaintiffs in an action at law. Thus, there is a clear showing of irreparable injury.

■ The plaintiffs have made various claims in their attempt to show likelihood of success on the merits. The claims include an allegation that Conn.Gen.Stat. § 12–487, as amended by Public Act 81–14, has been preempted by federal statutory law. *See* 49 U.S.C. § 11506; 49 C.F.R. §§ 1023.31, .33. The plaintiffs also allege that Public Act 81–14 has rendered Section 12–487 invalid as violative of the Privileges and Immunities clause of the United States Constitution, art. IV, § 2. *See Austin v. New Hampshire*, 420 U.S. 656, 662, 95 S.Ct. 1191, 1195, 43 L.Ed.2d 530 (1975). The plaintiffs' third claim is that Section 12–487 was amended in violation of Connecticut's Uniform Administrative Procedure Act, Conn. Gen.Stat. § 4–166 *et seq.*, and thus the plaintiffs have been denied their rights to due process as guaranteed by the Fifth and

Fourteenth Amendments to the United States Constitution. *See Bell Lines, Inc. v. United States*, 263 F.Supp. 40, 46 (S.D.W. Va.1967). At this time, however, it is not necessary to pass on the sufficiency of the foregoing allegations.[2] The Court finds that the plaintiffs have made a clear showing of probable success on the merits in their claim that Section 12–487, as amended, is violative of the Commerce Clause of the United States Constitution, art. I, § 8, cl. 3.

It does not appear to be disputed that Section 12–487 applies solely to out-of-state motor carriers. Connecticut General Statutes Section 14–12 imposes certain registration requirements on residents of Connecticut, and those who have so registered are excepted from the registration requirements of Section 12–487. "[V]ehicles bearing valid number plates issued by this state shall be exempt from the provisions of this section . . . ." Conn.Gen.Stat. § 12–487. Thus, Section 12–487 has a clear impact on interstate commerce.

The next level of inquiry is whether the tax is "applied to an activity with a substantial nexus with the taxing State, is fairly apportioned, does not discriminate against interstate commerce, and is fairly related to the services provided by the State." *Complete Auto Transit, Inc. v. Brady*, 430 U.S. 274, 279, 97 S.Ct. 1076, 1079, 51 L.Ed.2d 326 (1977). *See Mobil Oil Corp. v. Commissioner of Taxes*, 445 U.S. 425, 443, 100 S.Ct. 1223, 1234, 63 L.Ed.2d 510 (1980); *National Cable Television Association, Inc. v. FCC*, 554 F.2d 1094, 1106 (D.C.Cir.1976). Of particular importance in this case is the issue of apportionment. There must be

some affirmative showing that the tax bears some reasonable relation to the privilege of using the highways. *Dixie Ohio Express Co. v. State Revenue Commission*, 306 U.S. 72, 76–77, 59 S.Ct. 435, 437, 83 L.Ed. 495 (1939); *Interstate Transit, Inc. v. Lindsey*, 283 U.S. 183, 186, 51 S.Ct. 380, 381, 75 L.Ed. 953 (1931).

Connecticut has enacted a carefully structured, proportional motor carrier road tax scheme in Chapter 222. The amount of tax owed is calculated on the amount of motor fuel used in this state. Conn.Gen.Stat. §§ 12–479, –483, –485(c). Therefore, the tax is related to the mileage travelled within the state by the particular vehicle. Mileage is largely a factor of the weight of the vehicle and its cargo; and therefore the heaviest gross weight vehicles, which inflict the greatest damage to the state's highways, pay the highest road use taxes per mile travelled in the state, based upon the formula used for the assessment of gasoline gallonage consumption.

The purpose of the forty-dollar tax imposed by Section 12–487 is not apparent on the face of the statute.[3] An inability to ascertain the legislative purpose, however, is not of great moment, since it is the *effect* of this statute which will determine its constitutionality. *City of Philadelphia v. New Jersey*, 437 U.S. 617, 626, 98 S.Ct. 2531, 2536, 57 L.Ed.2d 475 (1978). This tax bears the most minimal relation to the registration service provided by the statute. The defendants have conceded that the amended statute will produce far more revenue than is needed to administer the registration program.[4] The excess revenue, if it is

---

2. These claims may be renewed, of course, at the hearing on the request for declaratory relief.

3. There is considerable circumstantial evidence that the legislative intent behind the eight-fold increase was to produce revenue in order to repair road damage caused by, in particular, 80,000 pound trucks. *See* Conn. Sen. Debate, 1981 Sess. 541 (Mar. 11, 1981) (remarks of Sen. Serrani); *Id.* at 543 (remarks of Sen. Schneller); Conn. House Debate, 1981 Sess. 135 (Mar. 17, 1981) (remarks of Rep. Shays). *See also* Finance Comm. Hearings, 1981 Sess. 29 (Feb.

24, 1981) (remarks of Sen. Serrani). There was some opposition to this unproportioned taxes. "I rise in opposition . . . hopefully on principle, and that is that the out of state truckers paid five dollars for what the title of this bill calls for, an annual registration fee." Conn. House Debate, 1981 Sess. 127 (Mar. 17, 1981) (remarks of Rep. Jaekle).

4. As must be apparent by now, an accurate determination of the administrative costs of the registration program will have a critical bearing on the Court's ultimate determination of the reasonableness of Section 12–487.

intended to pay the costs of road repair, bears no relation to whatever damage might have been done by a particular motor vehicle. The forty-dollar tax is assessed against 80,000 pound out-of-state trucks that travel one thousand miles per year on state roads, as well as against the 40,000 pound vehicle which travels but a fraction of that distance. Indeed, whatever the ultimate disposition of the excess revenue, it is clear that the assessment bears no relation to the vehicle's proportionate use of this state's highways.

There is a substantial likelihood that the plaintiffs will succeed on the merits of their claim, in that Section 12–487, as amended, imposes an impermissible burden on interstate commerce. A preliminary injunction was issued on May 1, 1981, effectively enjoining the defendants from proceeding under the provisions of Public Act 81–14. The injunction took effect upon the filing of a bond, by the plaintiffs, in the amount of Two Hundred and Fifty Thousand Dollars ($250,000). A hearing on the merits of the plaintiffs' request for declaratory relief is scheduled for June 1, 1981.

SO ORDERED.