**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

COLLINS HOLDING CORPORATION,
Plaintiff-Appellee,

v.

JASPER COUNTY, SOUTH CAROLINA, a
political subdivision of South
Carolina,
Defendant-Appellant.

No. 96-1354

Appeal from the United States District Court
for the District of South Carolina, at Beaufort.
Julian Abele Cook, Jr., Senior District Judge, sitting by designation.
(CA-94-2719-9-19)

Argued: July 8, 1997

Decided: September 3, 1997

Before NIEMEYER, MICHAEL, and MOTZ, Circuit Judges.

_____

Vacated and remanded with instructions by published opinion. Judge
Michael wrote the opinion, in which Judge Niemeyer and Judge Motz
joined.

_____

**COUNSEL**

**ARGUED:** David Scott Matthews, JASPER COUNTY ATTOR-
NEY'S OFFICE, Ridgeland, South Carolina, for Appellant. George
Marion Earle, HUNTER, MACLEAN, EXLEY & DUNN, P.C.,
Savannah, Georgia, for Appellee.

_____

**OPINION**

MICHAEL, Circuit Judge:

The substantive issue in this case is whether South Carolina law prohibits a Jasper County ordinance that imposes a license fee on businesses leasing video poker machines. The district court held that the ordinance cannot be enforced as written because it conflicts with South Carolina law. Because the issue of whether jurisdiction is barred by the Tax Injunction Act, 28 U.S.C. § 1341, must be addressed, we vacate the judgment of the district court and remand for that court to consider the applicability of the Act.

I.

Appellant Jasper County, South Carolina, enacted an ordinance in 1993 that imposes a "license fee" on various businesses associated with the gaming industry, including video poker arcades, distributors, and lessors. The purpose of the fee, as stated in the ordinance, is "providing regulation as may be required by the businesses subject thereto and for the purpose of raising revenue for the general fund of the County through a privilege tax." J.A. 256. The ordinance separates gaming businesses into different classes and assigns a separate rate to each class. Video poker arcades, distributors, and lessors must pay Jasper County $200 for the first $2,000 in income derived from the business and $40 for each $1,000 in income thereafter.

Appellee Collins Holding Corporation (Collins) leases video poker machines to bars, convenience stores, and other businesses in South Carolina. Collins paid a 1994 license fee of $17,000 (plus a $850 penalty) to Jasper County under protest and brought this action in the United States District Court for the District of South Carolina. Collins challenged the constitutionality of the Jasper County ordinance under the Equal Protection Clause of the United States Constitution, thereby invoking federal question jurisdiction. Collins also challenged the validity of the ordinance under South Carolina law. The district court, exercising supplemental jurisdiction to reach the state law claim, see 28 U.S.C. § 1367, held that the county ordinance imposed a license fee in excess of that permitted by South Carolina law. Collins was therefore awarded a refund. Jasper County appeals.

2

II.

We are bound on our own to ask whether the Tax Injunction Act ousted the district court of jurisdiction to hear Collins' case.[1] The Act is one sentence long: "The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341. This broad restriction on federal court jurisdiction over state and local tax matters reflects the importance of the taxing power to the operation of state governments as well as the desire of the Congress to restrain federal courts from unduly interfering with state revenue collection. See Arkansas v. Farm Credit Serv. of Cent. Arkansas, 117 S. Ct. 1776, 1780 (1997) ("The States' interest in the integrity of their own processes is of particular moment respecting questions of state taxation."); National Private Truck Council, Inc. v. Oklahoma Tax Comm'n, 515 U.S. 582, 115 S. Ct. 2351, 2354 (1995) ("`It is upon taxation that the several States chiefly rely to obtain the means to carry on their respective governments, and it is of the utmost importance to all of them that the modes adopted to enforce the taxes levied should be interfered with as little as possible.'" (quoting Dows v. City of Chicago, 78 U.S. (11 Wall.) 108, 110 (1871))).

Two questions frequently arise when a federal court considers whether the Tax Injunction Act bars a suit challenging a state or local tax. First, do the state courts provide a "plain, speedy and efficient" remedy? Second, is the state or local law a "tax," or is it a regulatory fee that falls outside the restrictions of the Tax Injunction Act?[2]

_____

[1] The parties did not raise this question either in district court or before us. Nevertheless, the Tax Injunction Act is a jurisdictional provision, and its application cannot be waived. See Cumberland Farms, Inc. v. Tax Assessor, 116 F.3d 943, 945 (1st Cir. 1997); Eastern Fed. Corp. v. Wasson, 525 F. Supp. 241, 243 (D.S.C. 1981) (noting that applicability of Tax Injunction Act must be resolved first because"[t]he court has a duty to inquire into its lack of jurisdiction"); see also Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 278 (1977) ("[W]e are obliged to inquire sua sponte whenever a doubt arises as to the existence of federal jurisdiction.").

[2] Settled case law provides some ready answers to other questions that might appear from a reading of just the text of the statute. First, the Tax

3

The "plain, speedy, and efficient" remedy question turns on whether the available state court remedies meet certain procedural criteria. See Rosewell v. LaSalle Nat'l Bank, 450 U.S. 503, 521 (1981). "In particular, a state-court remedy is plain, speedy and efficient only if it provides the taxpayer with a full hearing and judicial determination at which she may raise any and all constitutional objections to the tax." California v. Grace Brethren Church, 457 U.S. 393, 411 (1982) (citations and internal quotation marks omitted). Providing for a refund action may be sufficient: "the fact that a taxpayer must either pay a tax or post a bond prior to challenging the state tax assessment does not render the state's remedy outside the scope of the Tax Injunction Act." International Lotto Fund v. Virginia State Lottery Dep't, 20 F.3d 589, 593 (4th Cir. 1994); see also Great Lakes Dredge & Dock Co. v. Huffman, 319 U.S. 293, 301 (1943) (noting that Tax Injunction Act is "predicated upon the desirability of freeing, from interference by the federal courts, state procedures which authorize litigation challenging a tax only after the tax has been paid"). The "plain, speedy and efficient" remedy inquiry thus involves an exami-

_____

Injunction Act makes no mention of local (county and municipal) taxes, only taxes "under State law." 28 U.S.C. § 1341 (emphasis added). It has long been established, however, that the Tax Injunction Act applies to local taxes as well as state taxes. See, e.g., Rosewell v. LaSalle Nat'l Bank, 450 U.S. 503 (1981) (applying Tax Injunction Act to county property tax); Hager v. City of West Peoria, 84 F.3d 865, 868 n.1 (7th Cir. 1996). Second, the Tax Injunction Act only mentions suits to "enjoin, suspend or restrain" state tax administration, and Collins seeks a refund, not an injunction. The Act, however, has been interpreted broadly to bar suits for declaratory and injunctive relief, see California v. Grace Brethren Church, 457 U.S. 393, 407-11 (1982); Great Lakes Dredge & Dock Co. v. Huffman, 319 U.S. 293 (1943), and suits for refunds or monetary relief, see National Private Truck Council, Inc. v. Oklahoma Tax Comm'n, 515 U.S. 582 (1995); Cumberland Farms, Inc. v. Tax Assessor, 116 F.3d 943, 945 (1st Cir. 1997); Robinson Protective Alarm Co. v. City of Philadelphia, 581 F.2d 371, 373 n.5 (3d Cir. 1978). Third, most federal actions barred by the Tax Injunction Act are brought by out-of-state taxpayers who attempt to invoke diversity jurisdiction under 28 U.S.C. § 1332(a). Even so, the Act's jurisdictional bar applies with equal force to a complaint, such as this one, invoking federal question jurisdiction under 28 U.S.C. § 1331(a). See Robinson , 581 F.2d at 373 n.5; American Commuters Ass'n v. Levitt, 405 F.2d 1148, 1150-51 (2d Cir. 1969).

4

nation of state law to determine whether a taxpayer who follows the proper channels can receive adequate judicial review under state law.

Various circuit court decisions provide guidance for considering the second question -- whether the law is a "tax" or a "fee." See Cumberland Farms, Inc. v. Tax Assessor, 116 F.3d 943 (1st Cir. 1997); Hager v. City of West Peoria, 84 F.3d 865 (7th Cir. 1996); Bidart Bros. v. California Apple Comm'n, 73 F.3d 925 (9th Cir. 1996); San Juan Cellular Tel. Co. v. Public Serv. Comm'n, 967 F.2d 683 (1st Cir. 1992). These cases make a general distinction between broader-based taxes that sustain the essential flow of revenue to state (or local) government and fees that are connected to some regulatory scheme. Taxes fall within the scope of the Tax Injunction Act, but regulatory fees do not.

Distinguishing a tax from a fee often requires careful analysis because the line between "tax" and "fee" can be a blurry one.[3] The First Circuit has identified the clear cases:

> [Courts] have sketched a spectrum with a paradigmatic tax at one end and a paradigmatic fee at the other. The classic "tax" is imposed by a legislature upon many, or all, citizens. It raises money, contributed to a general fund, and spent for the benefit of the entire community. The classic "regulatory fee" is imposed by an agency upon those subject to its regulation. It may serve regulatory purposes directly by, for example, deliberately discouraging particular conduct by making it more expensive. Or, it may serve such purposes indirectly by, for example, raising money placed in a special fund to help defray the agency's regulation related expenses.

San Juan Cellular, 967 F.2d at 685 (citations omitted).

It is useful to begin with a look at who imposes, administers, and collects the assessment. An assessment imposed directly by a legislature is more likely to be a tax than one imposed by an administrative

_____

[3] Whether the body imposing the assessment labels it as a tax or a fee is not dispositive because the label is not always consistent with the true character of the assessment. See Cumberland Farms, 116 F.3d at 946.

agency. <u>Cumberland Farms</u>, 116 F.3d at 946; <u>Bidart Bros.</u>, 73 F.3d at 931; <u>San Juan Cellular</u>, 967 F.2d at 686. If responsibility for administering and collecting the assessment lies with the general tax assessor, it is more likely to be a tax; if this responsibility lies with a regulatory agency, it is more likely to be a fee. <u>Cumberland Farms</u>, 116 F.3d at 946; <u>Bidart Bros.</u>, 73 F.3d at 931; <u>see also Hager</u>, 84 F.3d at 871 ("A fee that reasonably estimates the cost imposed by the person required to pay the fee is better seen as a user fee within the municipality's regulatory power, not a tax."). But the heart of the inquiry centers on function, requiring an analysis of the purpose and ultimate use of the assessment. If the revenue is paid into the state's (or county's) general fund and provides a general benefit to the public, it sounds like a tax. If, on the other hand, the assessment covers only a narrow class of persons and is paid into a special fund to benefit regulated entities or defray the cost of regulation, it sounds like a fee. <u>See Cumberland Farms</u>, 116 F.3d at 947; <u>Hager</u>, 84 F.3d at 870-71 ("Rather than a question solely of where the money goes, the issue is why the money is taken."); <u>Bidart Bros.</u> , 73 F.3d at 932-33; <u>San Juan Cellular</u>, 967 F.2d at 686.

In this case we believe the two key questions -- whether the Jasper County ordinance is a tax or a fee and whether there is a "plain, speedy, and efficient" state remedy -- could be better answered on a fuller record. The jurisdictional issue was not raised or considered in district court, and the record was not developed with this issue in mind. Nor have we had the benefit of any briefing on the subject. As a result, we have decided to vacate the judgment and remand the case for the development of a record on, and for consideration of, the applicability of the Tax Injunction Act. <u>See</u>, <u>e.g.</u>, <u>E. J. Sebastian Assocs. v. Resolution Trust Corp.</u>, 43 F.3d 106, 109 (4th Cir. 1994) (remanding for further development of record and reconsideration).**4**

_____

**4** We leave the course of the proceedings on remand to the good judgment of the district court. For what it is worth, however, we note that summary judgment proceedings are often used to litigate and decide issues arising under the Tax Injunction Act. <u>See Cumberland Farms</u>, 116 F.3d at 946 ("The classification of an impost for purposes of the [Tax Injunction Act] -- `tax' versus `fee'-- presents a question of law appropriate for resolution on a properly developed summary judgment record.").

If the district court decides that the Act deprives it of jurisdiction, it should dismiss the complaint without prejudice to appropriate state proceedings. If the court decides the opposite, it should enter judgment on the merits.

The opinion and judgment of the district court are vacated and the case is remanded for further proceedings consistent with this opinion.

VACATED AND REMANDED WITH INSTRUCTIONS

7