**COMMUNITY HOUSING MANAGEMENT CORP., INC., Carrington Arms Housing Development Fund Company, Inc. Lincoln Towers Housing Development, Fund Corporation, Huguenot Housing Associates, LLC Washington House Housing Development Fund Corporation, Maple Center Limited Profit Housing Development Fund Company, Inc., Jean Anderson, and Robert Rice, Plaintiffs,**

v.

**CITY OF NEW ROCHELLE, NEW YORK and The City Council of the City of New Rochelle, New York, Defendants.**

**No. 04 CIV.3122 CM.**

United States District Court, S.D. New York.

Aug. 5, 2005.

David Christopher Wilkes, Huff Wilkes, LLP, Tarrytown, NY, for Plaintiffs.

Peter Alexander Meisels, Wilson Elser Moskowitz Edelman & Dicker LLP, Stamford, CT, for Defendants.

## DECISION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

MCMAHON, District Judge.

Plaintiffs Community Housing Management Corp., Inc. ("CHMC"), Carrington Arms Housing Development Fund Company, Inc. ("Carrington Arms"), Lincoln Towers Housing Development Fund Corporation ("Lincoln Towers"), Huguenot Housing Associates, LLC ("Huguenot House"), Washington House Housing Development Fund ("Washington House"), Maple Center Limited Profit Housing Company, Inc. ("Maple Center"), Maple Terrace Housing Development Fund Company, Inc. ("Maple Terrace"), Jean Anderson, and Robert Rice (collectively, "plaintiffs") own, operate, and occupy low-income and senior occupied apartment buildings in New Rochelle, New York. Collectively, they brought an action to set aside, as applied to them, a "user fee" imposed by the City of New Rochelle (the "City") for costs allegedly associated with refuse collection and disposal ("refuse fee"). Plaintiffs sought to avoid the compulsory refuse fee on the basis that they do not use the City's sanitation service, but rather wish to continue the private sanitation contracts as they have for the last twelve years.

Plaintiffs brought this action against defendants City and the City Council of the City of New Rochelle (the "City Council") pursuant to 42 U.S.C. §§ 1983 and 1988 claiming a deprivation of their rights under the Due Process and Equal Protection Clauses of the Fourteenth Amendment, the Commerce Clause, Art. I, Sec. 8, the Fair Housing Act, 42 U.S.C. § 3601, *et seq.*, and multiple state causes of action.

Plaintiff moved for summary judgment pursuant to Fed.R.Civ.P. 56, and defendants moved to dismiss for lack of subject matter jurisdiction pursuant to Fed. R.Civ.P. 12(b)(1), or in the alternative, for summary judgment. For the reasons set forth below, I grant the defendants' motion to dismiss for lack of subject matter jurisdiction and dismiss without prejudice both parties' motions for summary judgment as moot.

## I.  Facts

The facts alleged as per the Complaint, are as follows:

CHMC is a New York Corporation responsible for the operation of low and moderate income housing properties including Carrington Arms, Lincoln Towers, Huguenot House, Washington House, Maple Center, and Maple Terrace, each of which are apartment buildings (multi-family dwellings) in New Rochelle. Cplt. ¶¶ 4; 15–26. These plaintiffs are in the business of operating low-income, moderate-income, and senior housing developments in the City. Cplt. ¶ 110. Plaintiffs receive federal funding for the operation of their developments and are in turn limited in the amount of rent they can charge defendants. Cplt. ¶ 111.

Jean Anderson and Robert Rice are both New Rochelle residents who are tenants in one or more of these apartment buildings and who pay rent to the owners for the housing, services, and facilities. Cplt. ¶¶ 29, 31.

Like any apartment building, the residents of these buildings—including Anderson and Rice—generate solid waste, refuse, and trash, which the property operators need to have removed from the premises. Cplt. ¶¶ 27–29. The City of New Rochelle provides solid waste, refuse, and trash collection services, including recyclables to some, but not all, property owners in the City. Cplt. ¶ 32.

Prior to January 1, 2004, the City levied taxes against all non-exempt property owners within the City to finance the cost of trash collection services. Cplt. ¶ 38. With the exception of Hugeunot House, all plaintiffs were tax-exempt property owners or were tax-exempt property owners but remitted payments to the City pursuant to a Payments–In–Lieu–Of–Tax–Agreement ("PILOT"). Cplt. ¶ 39. Huguenot House paid taxes to the City—like any ordinary property owner—part of which was presumably used to fund the cost of the trash collection services provided to New Rochelle residents. Cplt. ¶ 40.

At all relevant times, prior to January 1, 2004, defendants did not provide trash collection services to plaintiffs at their respective premises. Cplt. ¶ 41. Plaintiffs claim that defendants could not provide adequate trash collection services. Cplt. ¶ 42.

Because defendants could not provide plaintiffs with adequate trash removal services, the owners and operators of Carrington Arms, Lincoln Towers, Huguenot House, Washington House, Maple Center, and Maple Terrace, entered into written contracts with a private carter for the removal of solid waste, refuse, and trash generated by the operations' residential tenants, and others at plaintiffs' respective properties. Cplt. ¶ 44. Pursuant to these contracts, plaintiffs must remit a monetary sum—to the private carter—on a monthly basis for the trash collection services. Cplt. ¶ 45.

On or about November 18, 2003, the City resolved that it would hold a public hearing on December 9, 2003, on a proposed Local Law to "establish residential refuse fees and providing for the lien and collection thereof." Cplt. ¶ 48. And on or about December 29, 2003, the City Council enacted Local Law 13, entitled "Local Law Intro No ... adopting a new subsection 163–20.C to Article IV of Chapter 163, Garbage, Rubbish and Refuse of the City Code to establish residential refuse fees and providing for the lien and collection thereof" (hereinafter "Local Law 13"). Cplt. ¶ 49.

Pursuant to Local Law 13, the City Council established "Residential Refuse Fees to defray the cost of collection, transportation, and disposal of solid waste and recyclables from improved real properties containing dwelling units in the City." Cplt. ¶ 50. The law became effective on

January 1, 2004. Cplt. ¶ 53. Plaintiffs allege that Local Law 13 was actually adopted as a pretext to defray the City's increased pension and retirement costs. Cplt. ¶ 50.

Defendants enacted Local Law 13 and Section 133–1 (collectively, the "refuse fee") as a means of establishing a locally controlled revenue source because the State of New York limited defendants' ability to raise property taxes to no more than the increase in the Consumer Price Index. Cplt. ¶ 63. According to at least one City official, defendants would reconsider the refuse fee if the State provided more general funding to New Rochelle. Cplt. ¶ 64.

The refuse fee for each improved property is determined on a yearly basis by multiplying the number of dwelling units on each tax assessment lot (as shown in the most current tax assessment roll and records of the City Assessor) by the Per Unit Residential Refuse Fee set forth in Chapter 133 of the City Code. Cplt. ¶ 51. The refuse fee is imposed on plaintiffs regardless of whether or not they actually use defendants' refuse collection services. Cplt. ¶ 65.

Local Law 13 and Section 133–1 provide that the collection and enforcement of the residential refuse fee shall be collected and enforced in the same manner and at the same time as City of New Rochelle real property taxes. Cplt. ¶ 62. Pursuant to Local Law 13, "If a Residential Refuse Fee including accrued interest thereon is not fully paid on or before November 30 of the calendar year for which originally billed, the unpaid amount shall, pursuant to the procedures set forth in the Section 120–cc of the General Municipal Law, become a lien as of January 1 of the next succeeding year and shall accrue additional interest, be collected, and be enforced in the same manner and at the same time as

provided by law for City taxes due in such next succeeding year." Cplt. ¶ 52.

On or about December 29, 2003, the City Council enacted an ordinance to amend Section 133–1, Enumeration of Fees, of the Code of the City of New Rochelle ("City Code"). Cplt. ¶ 54. Section 133–1 set up a schedule of fees and a yearly fee of $165 was established per dwelling unit and a $75 fee was established for dwelling units that had Senior Citizen Tax Exemptions and dwelling units in buildings which limit occupancy to senior citizens with incomes below 50% of the median income in Westchester County. Cplt. ¶¶ 54–57.

Plaintiffs claim that the fees set forth in this section bear no rational relationship to the actual costs of solid waste, trash and refuse collection services provided by the City. Cplt. ¶¶ 58, 79. Plaintiffs allege that the refuse fee is a tax labeled as a fee, and that the residential refuse fee is being exacted for municipal revenue purposes. Cplt. ¶¶ 80, 81.

Plaintiffs claim that defendants still cannot provide the same refuse and waste removal services as are being provided by the private carter, and plaintiffs have not requested that the City provide such services to them. Cplt. ¶¶ 42, 68–69.

## II.  Standards

Rule 12(b)(1) of the Federal Rules of Civil Procedure provides for the dismissal of a claim when the federal court "lacks jurisdiction over the subject matter." Fed.R.Civ.P. 12(b)(1).

In considering a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, a court must assume as true factual allegations in the complaint. *Shipping Fin. Serv. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir.1998) (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)), but refrain from

"drawing from the pleadings inferences favorable to the party asserting [jurisdiction]." *Id.* (citing *Norton v. Larney*, 266 U.S. 511, 515, 45 S.Ct. 145, 69 L.Ed. 413 (1925)).

However, the Court "need not accept as true contested jurisdictional allegations." *Shenandoah v. Halbritter*, 275 F.Supp.2d 279, 284 (N.D.N.Y.2003) (citations omitted). Courts evaluating Rule 12(b)(1) motions "may resolve the disputed jurisdictional fact issues by reference to evidence outside the pleadings, such as affidavits." *Zappia Middle East Constr. Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir.2000); *see also Makarova v. United States*, 201 F.3d 110, 113 (2d Cir.2000) ("In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court ... may refer to evidence outside the pleadings." (citations omitted)); *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 108 (2d Cir.1997) (in assessing a motion to dismiss for lack of subject matter jurisdiction, Court is not limited to the allegations of the complaint).

On a motion to dismiss pursuant to Rule 12(b)(1), the party asserting that the court has subject matter jurisdiction—the plaintiff—bears the burden of proving the court's jurisdiction. *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990); *Overton v. New York State Div. of Military and Naval Affairs*, 373 F.3d 83, 93 (2d Cir.2004). If at any time it comes to the court's attention, by the parties or otherwise, that subject matter jurisdiction is lacking, the action must be dismissed. Fed.R.Civ.P. 12(h)(3).

## III. Discussion

Defendants moved to dismiss the complaint which alleges discriminatory enactment and administration of the Refuse User Fee in the City of New Rochelle pursuant to Fed.R.Civ.P. 12(b)(1). Defendants assert that this court lacks subject matter jurisdiction to hear this matter because of the Tax Injunction Act, 28 U.S.C. § 1341 (hereinafter "the Act"). The Act prohibits federal district courts from "enjoin[ing], suspend[ing] or restrain[ing]" the collection of any tax under state law whenever "a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341 (1988). Defendants claim that this jurisdictional bar requires that the Complaint be dismissed.

■ The language of the Tax Injunction Act specifically sets forth two elements which must be satisfied before federal jurisdiction is revoked. First, the fee must be determined to be a "tax," since the bar established by the Act applies only to "taxes," and does not bar jurisdiction over cases involving "regulatory fees." *See Kraebel v. New York City Dep't of Housing Preservation and Development*, 959 F.2d 395, 400 (2d Cir.1992). Second, there must be "a plain, speedy and efficient remedy" in the state courts. *See id.* Plaintiffs do not argue that the remedy available to them in the state court fails this standard. *See* Plaintiffs' Memorandum of Law in Opposition to Defendant's Notion to Dismiss for Lack of Subject Matter Jurisdiction, or, in the Alternative, for Summary Judgment, dated Dec. 20, 2004, ("Pl.Mem.") at 1–7. Accordingly, that issue is not in dispute and need not be decided. *See, e.g., Gasparo v. City of New York*, 16 F.Supp.2d 198, 217–18 (E.D.N.Y. 1998). There is also no real dispute that the refuse fee is really a tax—in fact, plaintiffs plead that it is a tax disguised as a fee. *See* Cplt. ¶ 80. Based on the facts as set forth in the Complaint and for the reasons stated below, I find that the refuse fee constitutes a tax within the meaning of the the Act.

Plaintiffs do argue, however, that because they have paid the user fee, this litigation does not seek to "enjoin, suspend, or restrain" the collection of such a "tax." *See id.* at 5–7. For the reasons stated below, I find that this action seeks to enjoin the collection of a municipal tax.

### 1. The Refuse Fee a "Tax" Under the Act

■ For purposes of the Tax Injunction Act, it is this court that decides whether the state or local law is a tax, guided by "federal law . . . rather than . . . state tax labels." *Robinson Protective Alarm Co. v. City of Philadelphia*, 581 F.2d 371, 374 (3d Cir.1978); *see also Folio v. City of Clarksburg*, 134 F.3d 1211, 1217 (4th Cir.1998); *Collins Holding Corp. v. Jasper County, S.C.*, 123 F.3d 797, 800 n. 3 (4th Cir.1997) ("[w]hether the body imposing the assessment labels it as a tax or a fee is not dispositive because the label is not always consistent with the true character of the assessment"), Thus, we look to federal law which "make[s] a general distinction between broader-based taxes that sustain the essential flow of revenue to state (or local) government and fees that are connected to some regulatory scheme." *Collins*, 123 F.3d at 800.

■ A tax is generally a revenue-raising measure, imposed by a legislative body, that allocates revenue "to a general fund, and [is] spent for the benefit of the entire community." *Id.* (quoting *San Juan Cellular Tel. Co. v. Public Serv. Comm'n*, 967 F.2d 683, 685 (1st Cir.1992)). A user fee, by contrast, is a "payment[ ] given in return for a government provided benefit" and is tied in some fashion to the payor's use of the service. *United States v. City of Huntington*, 999 F.2d 71, 74 (4th Cir. 1993).

Courts, including the Second Circuit, have broadly defined the word "tax" under the Act to include any state or local revenue collection device. *See, e.g., Keleher v. New England Telephone & Telegraph Co.*, 947 F.2d 547, 549–50 (2d Cir.1991), *abrogated on other grounds by, Jefferson County v. Acker*, 527 U.S. 423, 119 S.Ct. 2069, 144 L.Ed.2d 408 (1999) (citing *Robinson*, 581 F.2d at 374–76); *see also Tramel v. Schrader*, 505 F.2d 1310 (5th Cir.1975); *Alnoa G. Corp. v. City of Houston*, 563 F.2d 769 (5th Cir.1977), *cert. denied*, 435 U.S. 970, 98 S.Ct. 1610, 56 L.Ed.2d 62 (1978); *Schneider Transport, Inc. v. Cattanach*, 657 F.2d 128 (7th Cir.1981), *cert. denied*, 455 U.S. 909, 102 S.Ct. 1257, 71 L.Ed.2d 448 (1982).

Furthermore, the reach of the Act has not been limited to challenges to revenue procedures labeled as "taxes." *See, e.g., Robinson, supra*, 581 F.2d 371 (finding challenge to a user fee—delineated as a rental fee—barred by the Act); *Tramel, supra*, 505 F.2d 1310 (holding that a special street improvement assessment, designed to raise revenue for a specific municipal action, was a tax within the meaning of the Act); *Schneider, supra*, 657 F.2d 128 (finding that truck registration fees, designed as a revenue-raising measure to support highway needs, were taxes within the meaning of the Act).

The Court in *Robinson* reasoned that the application of the Act "should be determined as a matter of federal law by reference to congressional policies underlying [the Act], rather than by adoption of state tax labels developed in entirely different legal contexts." *Robinson*, 581 F.2d at 374. The Court focused on the function of the fee at issue, rather than on its label. *Id.* (finding that where the fee was intended as a revenue raising measure, similar to a tax, a federal court action challenging that fee could not be maintained).

To determine whether a measure that raises revenue is a tax for purposes of the Act, rather than merely a "regulatory fee," courts "have tended ... to emphasize the revenue's ultimate use, asking whether it provides a general benefit to the public, of a sort often financed by a general tax, or whether it provides more narrow benefits to regulated companies or defrays the agency's costs of regulation." *Travelers Ins. Co. v. Cuomo*, 14 F.3d 708, 713 (2d Cir.1993) (quoting *San Juan Cellular, supra*, 967 F.2d at 685), *rev'd on other grounds sub nom., New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 653, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995). Using this analytical framework, the Second Circuit concluded that a New York statute imposing surcharges on hospital rates for certain payors was a "tax" for the purposes of the Act, because "notwithstanding the primary [regulatory] purposes ascribed to the surcharges by the State, both [surcharges] raise revenue which is ultimately paid into the State's general fund." *Id.; see also Gasparo, supra*, 16 F.Supp.2d 198, 217–18 (using the analysis in *Travelers* and finding that an occupancy charge which flowed into the city's general revenue fund to be a tax within the meaning of the Act).

The Second Circuit acknowledged in *Travelers* that, "there is no bright line between assessments [or fees] that are taxes and those that are not." *Id.* at 713.

> [Courts] have sketched a spectrum with a paradigmatic tax at one end and a paradigmatic fee at the other. The classic "tax" is imposed by a legislature upon many, or all, citizens. It raises money, contributed to a general fund, and spent for the benefit of the entire community. The classic "regulatory fee" is imposed by an agency upon those subject to its regulation. It may serve regulatory purposes directly by, for example, deliberately discouraging particular conduct by making it more expensive. Or, it may serve such purposes indirectly by, for example, raising money placed in a special fund to help defray the agency's regulation related expenses.

*Gasparo, supra*, 16 F.Supp.2d at 218 (quoting *Collins, supra*, 123 F.3d at 799 (citation omitted)).

■ The refuse user fee at issue in this case possesses several characteristics that move it towards the "tax" end of the spectrum. First, the fee was enacted and is administered by the City Council and the City of New Rochelle rather than by some specific agency, such as the Department of Sanitation (Cplt.¶¶ 49, 50, 51). Second, the refuse user fee is collected and enforced in the same manner and at the same time as City of New Rochelle real property taxes (Cplt.¶ 62). Third, the fee is levied upon all owners of improved properties in the City, not just on those property owners who use the refuse collection services provided by the City (Cplt.¶ 65). *See generally, Gasparo*, 16 F.Supp.2d at 218 (citing *San Juan Cellular, supra*, 967 F.2d 683 (finding that "periodic fee" assessed on private company was not a "tax" because, *inter alia*, it was *not* imposed on general public)); *Miami Herald Publishing Co. v. City of Hallandale*, 734 F.2d 666 (11th Cir.1984) (finding that occupational license fee on all vending machines, including newsracks, was tax for purposes of Tax Injunction Act); *see also Folio, supra*, 134 F.3d at 1217–18 and *United States v. City of Huntington*, 999 F.2d 71, 73–74 (4th Cir.1993) (both concluding that municipal fire service protection fees constituted a tax within the meaning of the Tax Injunction Act because liability for the fee was based upon a resident's property owner status instead of his use of the city service).

Most significantly, as the Fourth Circuit stated in *Collins,* and as the Second Circuit's analysis in *Travelers* indicates, "the heart of the inquiry centers on function, requiring an analysis of the purpose and ultimate use of the [fee]." *Collins,* 123 F.3d at 800; *Travelers,* 14 F.3d at 713; *see also Gasparo,* 16 F.Supp.2d at 218. Both the alleged purpose and use of the refuse user fee by the City also lead to the conclusion that the user fee is a "tax" within the meaning of the Act. Plaintiffs allege that the purpose of the fee was to establish a locally controlled revenue source because the State of New York limited defendants' ability to raise property taxes to no more than the increase in the Consumer Price Index. Cplt. ¶ 63. They further allege that the monies collected through the refuse user fee are used to defray the City's increased pension and retirement costs. Cplt. ¶ 50.

Indeed, plaintiffs specifically allege that the refuse user fee is a tax labeled as a fee. Cplt. ¶ 80. Plaintiffs allege that the refuse user fee is a tax because: (1) it is being exacted for municipal revenue services (Cplt.¶ 81.); (2) it imposes a municipal charge without regard to whether plaintiffs are benefited by the City's solid waste, refuse, and trash collection services (Cplt.¶ 82.); (3) it imposes a municipal charge irrespective of whether plaintiffs actually utilize the City's solid waste, refuse, and trash collection services (Cplt.¶ 83.); and (4) it imposes a municipal charge without regard to whether a rationale underpinning exists between the charge imposed, the service provided, and the benefit received (Cplt.¶ 84).

Although not binding on this court, the Northern District of Illinois considered a similar fact pattern where plaintiffs acting *pro se* alleged that the defendant City violated their equal protection rights under the Fourteenth Amendment by enforcing local ordinances that required the Wilsons to pay the City for garbage collection. *Wilson v. City of Harvey,* No. 03 C 11, 2003 WL 21418037, at *1 (N.D.Ill. June 18, 2003). Plaintiffs preferred to dump their own garbage and be excused from paying monthly service fee assessed by the City for garbage collection. *Id.*

The plaintiffs in *Wilson* alleged that the city charged them $480 a year for garbage collection, but they failed to allege the ultimate destination or purpose of this monthly payment. *Id.* at *1, *3. The Court held that, in the absence of such an allegation, it believed that it was reasonable to find that the funds are intended to pay for the cost of the service. *Id.* at *3. Accordingly, the court concluded for purposes of the motion that the revenue raised by the City for garbage collection was not a tax and that the Tax Injunction Act did not apply. *Id.*

In this case however, plaintiffs allege that Local Law 13 was actually adopted as a pretext to defray the City's increased pension and retirement costs. Cplt. ¶ 50. Plaintiffs claim that the fees set forth in this section bear no rational relationship to the actual costs of solid waste, trash and refuse collection services provided by the City (Cplt.¶¶ 58, 79), and that the residential refuse fee is being exacted for municipal revenue purposes. Cplt. ¶ 81. Thus, applying the analysis in *Wilson* to these facts, the refuse fee imposed by the City would constitute a tax for purposes of the Act.

In *Diginet, Inc. v. Western Union ATS, Inc.,* 958 F.2d 1388 (7th Cir.1992), the Seventh Circuit stated:

> If the fee is a reasonable estimate of the cost imposed by the person required to pay the fee, then it is a user fee and is within the municipality's regulatory power. If it is calculated not just to recover a cost imposed on the municipal-

ity or its residents but to generate revenues that the municipality can use to offset unrelated costs or confer unrelated benefits, it is a tax, whatever its nominal designation.

*Id.* at 1399 (finding franchise fee levied by municipality on user of fiber optic cable to be a tax).

Here, plaintiffs allege that the refuse fee is imposed on plaintiffs regardless of whether or not they actually use defendants' refuse collection services. Cplt. ¶ 65. Furthermore, plaintiffs claim that the fees set forth in this section bear no rational relationship to the actual costs of solid waste, trash and refuse collection services provided by the City (Cplt.¶¶ 58, 79), the refuse fee is not being used to defray these costs (Cplt.¶ 50), and the refuse fee is being used for municipal revenue purposes, to wit: increased pension and retirement costs. Cplt. ¶ 50, 81.

Although the Second Circuit has opined on this issue only a few times, to the extent that similar types of fees and charges have been considered, the Court of Appeals has repeatedly found them to be "taxes" for the purposes of the Act. *See, e.g., Travelers, supra,* 14 F.3d at 713; *Keleher, supra,* 947 F.2d at 549 (finding city-assessed public utility "franchise fee" to be a "tax" since revenues derived thereby were treated as part of city's general revenue); *Gasparo, supra,* 16 F.Supp.2d at 218 (finding an occupancy charge applied to all newsstand owners is a tax within the meaning of the Act); *VJG Realty Corp. v. City of New York,* No. 89 Civ. 1648, 1990 WL 80036, at *3 (S.D.N.Y.1990) (finding that both charges arising from clean-ups performed by the Health Department in and around plaintiffs' properties and liens for overdue water and sewage charges to be taxes under the meaning of the Act); *American Trucking Associations, Inc. v. Conway,* 514 F.Supp. 1341 (D.Vt.1981)

(permit fees on interstate vehicles registered out-of-state were a "tax" where fees exceeded administrative costs of registration program, were earmarked for general fund, and intent of legislature was to raise revenue).

These finding are consistent with federal case law throughout the country. *See, e.g., Folio, supra,* 134 F.3d at 1213–14 (finding that an ordinance that imposed fees upon property owners and occupiers within the City for fire protection services and an injunction against the future collection of the fee was a tax subject to the Tax Injunction Act because the ordinance raised revenue for the public benefit and was not "in the nature of a privilege fee"); *Indiana Waste Systems, Inc. v. County of Porter,* 787 F.Supp. 859 (N.D.Ind.1992) (special assessment by municipality is "tax," as is property tax, gross receipts tax, city license tax, and state permit fees); *Butler v. State of Maine Supreme Judicial Court,* 767 F.Supp. 17 (D.Me.1991) (finding jury fee promulgated by Maine Supreme Court and imposed on out-of-state litigants to be a tax); *Adams v. Board of Supervisors of Henry County Va.,* 569 F.Supp. 20 (D.Va. 1983) (license fee on fortune tellers was tax).

Taking into consideration the broad construction that courts both in the Second Circuit and in other Circuits have consistently employed in this area, and based on the facts as alleged by the plaintiff, I conclude that the refuse fee is a tax for the purposes of the Tax Injunction Act.

## 2. Plaintiff Is Seeking to "Enjoin, Suspend, or Restrain" the Collection of a State Tax

■ Having found the refuse fee to constitute a tax under the Act, and since there is no dispute as to the availability of a "plain, speedy and efficient" remedy at state law that plaintiffs can seek in state

court, I now address plaintiffs' argument that this is not the type of action which is barred by the Act from being litigated in federal court. As discussed, the Act prohibits federal district courts from "enjoin[ing], suspend[ing] or restrain[ing]" the collection of any tax under state law whenever "a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341.

■ The Act "prohibits a federal district court, in most circumstances, from issuing an injunction enjoining the collection of state taxes .... [T]he Act also prohibits a district court from issuing a declaratory judgment holding state tax laws to be unconstitutional." *California v. Grace Brethren Church*, 457 U.S. 393, 408, 102 S.Ct. 2498, 73 L.Ed.2d 93 (1982). The Act similarly prohibits federal courts from issuing declaratory judgments as to the constitutionality of a state tax, and from entertaining damages actions under 42 U.S.C. § 1983. *National Private Truck Council Inc. v. Oklahoma Tax Comm'n*, 515 U.S. 582, 589–92, 115 S.Ct. 2351, 132 L.Ed.2d 509 (1995); *Fair Assessment in Real Estate Ass'n v. McNary*, 454 U.S. 100, 102, 102 S.Ct. 177, 70 L.Ed.2d 271 (1981) (holding that while the Act speaks only to injunction actions, it has been held that the effect of the Act extends to damage actions through the principles of comity); *VJG Realty Corp. v. City of New York*, No. 89 Civ. 1648, 1990 WL 80036, at *2 (S.D.N.Y.1990).

■ The Act is undergirded by a policy of restraint in the federal courts, which, save for limited exceptions, are "under an equitable duty to refrain from interfering with a State's collection of its revenue" in light of "the imperative need of a State to administer its own fiscal operations." *Tully v. Griffin, Inc.*, 429 U.S. 68, 73, 97 S.Ct. 219, 222, 50 L.Ed.2d 227 (1976). Essentially, "the Act ... [is] first and foremost a

vehicle to limit drastically federal district court jurisdiction to interfere with so important a local concern as the collection of taxes." *Rosewell v. LaSalle Nat'l Bank*, 450 U.S. 503, 522, 101 S.Ct. 1221, 1234, 67 L.Ed.2d 464 (1981).

Plaintiffs cite *Hibbs v. Winn*, 542 U.S. 88, 124 S.Ct. 2276, 159 L.Ed.2d 172 (2004), which affirmed a Ninth Circuit decision holding that a federal action challenging the granting of a state tax credit is not prohibited by the Act. 124 S.Ct. at 2283. The Supreme Court so held because the litigation did not threaten to adversely affect the state's ability to raise revenue. *Id.* at 2283, 2292. Plaintiffs also rely on *Jefferson County, supra*, 527 U.S. 423, 119 S.Ct. 2069, 144 L.Ed.2d 408, which was an action by the state to enforce payment of a tax. Here too, the Supreme Court found that this type of action does not seek to restrain state action and therefore is not barred by the Act. *Id.* at 435–36, 119 S.Ct. 2069.

The present case is distinguishable from both *Hibbs* and *Jefferson County*. Here, the plaintiff seeks to have this court "vacat[e], annul[ ], strik[e], set[ ] aside, and declar[ ] void, Local Law No. 13 and Section 133–1" (Cplt. at "Wherefore" clauses (a)—(i)), grant declaratory relief to that effect (*id.* at (j)), and to "enjoin[ ] Defendants ... from enforcing Local Law 12 and Section 133–1 as against Plaintiffs" all of which would restrain the City from collecting such refuse user fees from plaintiffs in the future (*id.* at (k)).

Although plaintiffs state in their brief that they have thus far made timely payment of the refuse fee (*see* Pl. Mem., *supra*, at 6), this action clearly seeks declaratory and injunctive relief to enjoin and restrain the City from charging the refuse user fee to plaintiffs in the future. Such actions are plainly barred from federal

jurisdiction by the Tax Injunction Act and must be pursued in state court.

For these reasons, I grant defendants' motion to dismiss the Complaint.

This constitutes the decision and order of the Court.