**FILED**
**United States Court of Appeals**
**Tenth Circuit**

# UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

**July 28, 2025**

**Christopher M. Wolpert**
**Clerk of Court**

CO2 COMMITTEE, INC.,

    Plaintiff - Appellant,

v.

MONTEZUMA COUNTY;
MONTEZUMA COUNTY BOARD OF
COUNTY COMMISSIONERS;
MONTEZUMA COUNTY
ASSESSOR,

    Defendants - Appellees.

No. 24-1337
(D.C. No. 1:23-CV-02457-CNS-NRN)
(D. Colo.)

## ORDER AND JUDGMENT*

Before **BACHARACH**, **PHILLIPS**, and **FEDERICO**, Circuit Judges.

This is a case challenging a retroactive tax assessment imposed on corporate entities in Colorado. Plaintiff CO2 Committee, Inc. (the Committee) filed suit against Montezuma County, the Montezuma County Board of County Commissioners, and the Montezuma County Assessor (together, the County). The Committee sought damages, declaratory relief,

---

    * This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Federal Rule of Appellate Procedure 32.1 and Tenth Circuit Rule 32.1.

and injunctive relief under 42 U.S.C. § 1983. The Committee alleged that it was improperly subjected to a retroactive tax assessment by the County and did not receive proper notice of this assessment. The district court, however, ruled that it lacked subject matter jurisdiction to hear the case. It granted the County's motion to dismiss, citing the Tax Injunction Act of 1937 (TIA), 28 U.S.C. § 1341, which precludes federal courts from adjudicating challenges to state taxes.

The Committee argues on appeal that it was never provided a remedy or an opportunity to pursue its case in state court because its case in state court was dismissed for lack of standing. It further alleges that the district court failed to accept as true all allegations in its complaint. After full consideration of these arguments, we affirm the district court's dismissal of the complaint.

## I

The Committee filed this case in the United States District Court for the District of Colorado on the heels of more than a decade of previous court and state agency proceedings. The Committee's lawsuit is based on a

retroactive tax assessment imposed on the Committee's unit operator,[1] Kinder Morgan. The tax assessment arose from activities within the McElmo Dome Unit, a large deposit of carbon dioxide in Montezuma County, Colorado. The Committee alleges that its members own approximately an 11 percent interest in the McElmo Dome Unit, and that Kinder Morgan owns approximately 44 percent.

In an audit of the 2008 tax year, the County determined that Kinder Morgan's unit owed over $2 million in unpaid taxes based on a related party transaction conducted by Kinder Morgan.[2] The Committee alleges that Kinder Morgan then allocated the retroactive tax assessment to all nonoperating fractional interest owners, even though they played no role in

---

[1] A "unit" is "a consolidation of working interests that extract resources from a single geological reservoir." *Colorado Prop. Tax Adm'r v. CO2 Comm., Inc.*, 527 P.3d 371, 373 (Colo. 2023) (internal quotation marks omitted). Units are created to make the extraction process more efficient and coordinated, and although "the fractional interests in a unit may be owned by many entities, a single unit operator often handles the day-to-day operations." *Id.*

[2] As to the related party transaction, the Committee alleges that the County imposed a retroactive assessment because "Kinder Morgan, as a working interest owner, had impermissibly deducted transportation costs related to the Cortez Pipeline Company, a partnership in which Kinder Morgan was a 50% owner, thereby reducing its taxable income." Op. Br. at 11. The Committee further alleges that "[t]he additional taxes were not attributable to the Committee's members, who were unrelated to the Cortez Pipeline Company and permitted to deduct the full transportation costs." *Id.*

3

the related party transaction conducted by Kinder Morgan, and thus the Committee should not be held responsible to pay the additional taxes. It further alleges that it did not receive notice of the retroactive tax assessment imposed by the County against the unit's nonoperating fractional interest owners.

Both the Committee and Kinder Morgan pursued state administrative challenges and then filed Colorado state court lawsuits protesting the $2 million retroactive tax assessment. Both of their cases reached the Colorado Supreme Court, which ruled first against Kinder Morgan and then against the Committee. In rejecting Kinder Morgan's challenge, the Colorado Supreme Court held the retroactive tax assessment was lawful. *Kinder Morgan CO2 Co. v. Montezuma Cnty. Bd. of Comm'rs*, 396 P.3d 657, 667–68 (Colo. 2017).

The Committee claims that it was only after this ruling, in November 2017, that it first became aware of the retroactive tax being imposed on its unit by the County, and that Kinder Morgan "encouraged" it to file suit challenging the tax imposed on Kinder Morgan, the unit operator. Op. Br. at 11–12.

The Committee filed a lawsuit in Colorado state court on October 1, 2018, seeking to challenge the retroactive assessment imposed on Kinder Morgan. *Id.* at 12–13. The Committee's state court challenge failed,

4

however, because the Colorado Supreme Court held that "nonoperating fractional interest owners in an oil and gas unit" do not "have standing to independently challenge a retroactive assessment and property tax increase." *Colorado Prop. Tax Adm'r v. CO2 Comm., Inc.*, 527 P.3d 371, 375 (Colo. 2023). Instead, Colorado law "creates a representative system for oil and gas leaseholds and lands, in which the unit operator serves as the sole taxpayer." *Id.* at 378. Only the unit operator prepares and files an "Annual Statement." *Id.* at 373. Using the Annual Statement, the county tax assessor then calculates the property taxes owed by the unit, and "[u]nit operators are responsible for collecting these taxes from all of the nonoperating fractional interest owners and remitting the total amount owed to the county treasurer." *Id.* at 374.

Because the Committee is not a "taxpayer" under these circumstances and is not listed on the Annual Statement filed by the unit operator, the Colorado Supreme Court held that "the only entity that receives notice" of the valuation or retroactive tax assessment under Colorado law "is the unit operator." *Id.* at 378. It further held that the Committee's "expansive[]" view – that every fractional interest owner must receive notice of any tax obligation imposed on a unit – is both unworkable and "illogical." *Id.* at 379. It would require every county tax assessor to "mail notices of preliminary

5

findings to fractional interest owners" – even those "who are not identified in the Annual Statement." *Id.*

After losing before the Colorado Supreme Court, the Committee then filed suit in the District of Colorado.[3] The district court dismissed the case under the TIA, which broadly precludes a litigant from using the federal courts to challenge a state law tax. The district court held that the TIA divested it of federal subject matter jurisdiction, and it rejected the Committee's argument that the Colorado proceedings did not provide a "plain, speedy[,] and efficient remedy" to the Committee as required by the TIA, 28 U.S.C. § 1341. The district court held the "plain, speedy, and efficient remedy" exception did not apply because the Committee and its unit operator (Kinder Morgan) had both been provided a "full hearing and judicial determination" of their claims for relief. *CO2 Comm., Inc. v. Montezuma Cnty.*, No. 1:23-cv-02457-CNS-NRN, 2024 WL 3520711, at *5 (D. Colo. July 24, 2024) (internal quotation marks omitted).

The Committee timely appeals the entry of final judgment, so we have jurisdiction under 28 U.S.C. § 1291.

---

[3] As the Committee acknowledges, it filed an earlier lawsuit in 2018 in the District of Colorado to challenge the retroactive tax, which it dismissed without prejudice so it could pursue its state court strategy. Op. Br. at 13 n.1.

## II

We review de novo a district court's dismissal for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). *Audubon of Kansas, Inc. v. United States Dep't of Interior*, 67 F.4th 1093, 1108 (10th Cir. 2023). Because "federal courts are courts of limited jurisdiction, we presume no jurisdiction exists absent an adequate showing by the party invoking federal jurisdiction." *Siloam Springs Hotel, LLC v. Century Sur. Co.*, 906 F.3d 926, 931 (10th Cir. 2018) (quoting *United States v. Spectrum Emergency Care, Inc.*, 190 F.3d 1156, 1160 (10th Cir. 1999)).

## III

The Committee makes two arguments on appeal. It first contends that the district court erred because the Committee lacks a "plain, speedy, and efficient" remedy under Colorado state law, so the TIA does not preclude federal court jurisdiction over this case. Next, it argues that the district court erred by failing to take all facts alleged as true when reviewing the Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction. We address these arguments in turn.

### A

The TIA states that "[t]he district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy[,] and efficient remedy may be had in the courts of such

7

State." 28 U.S.C. § 1341. When it applies, the TIA divests federal courts from exercising jurisdiction over cases challenging taxes under state law. The TIA creates "a 'jurisdictional rule' and a 'broad jurisdictional barrier.'" *Marcus v. Kansas Dep't of Revenue*, 170 F.3d 1305, 1309 n.2 (10th Cir. 1999) (quoting *Arkansas v. Farm Credit Servs. of Cent. Arkansas*, 520 U.S. 821, 825 (1997)); *see also Rosewell v. LaSalle Nat'l Bank*, 450 U.S. 503, 522 (1981) (explaining that the TIA is "a vehicle to limit drastically federal district court jurisdiction to interfere with so important a local concern as the collection of taxes"). The TIA "has its roots in equity practice, in principles of federalism, and in recognition of the imperative need of a State to administer its own fiscal operations." *Rosewell*, 450 U.S. at 522 (internal quotation marks omitted).

The TIA is a "broad limitation on federal court interference with state collection of taxes" that bars injunctive relief, "declaratory relief, and suits for damages as well." *Brooks v. Nance*, 801 F.2d 1237, 1239 (10th Cir. 1986) (internal citation omitted). Congress passed the TIA nearly a century ago "to promote comity and to afford states the broadest independence, consistent with the federal constitution, in the administration of their affairs, particularly revenue raising." *Marcus*, 170 F.3d at 1309 (quoting *Wright v. McClain*, 835 F.2d 143, 144 (6th Cir. 1987)); *see also Collins Holding Corp. v. Jasper Cnty.*, 123 F.3d 797, 799 (4th Cir. 1997) (advising

8

that the TIA "reflects the importance of the taxing power to the operation of state governments" and the goal of preventing federal courts from interfering with state revenue collection).

Our first task in a case involving the TIA is to "determine whether the assessment at issue is a tax or a regulatory fee." *Marcus*, 170 F.3d at 1310–11. In this case, there is no dispute that the assessment challenged by the Committee is a tax, so "the [TIA] applies and operates to bar federal jurisdiction unless the state does not provide a plain, speedy and efficient remedy." *Id.* "The Supreme Court, however, has cautioned us to construe that exception narrowly." *Brooks*, 801 F.2d at 1240.

The Committee argues that the district court "never analyzed" whether Kinder Morgan's representative capacity to challenge the retroactive tax assessment met the requirements for a plain, speedy, and efficient remedy.[4] Op. Br. at 29. But the order granting the motion to dismiss addressed this issue directly. The district court held that although the Committee "maintains that its interests were not represented by Kinder Morgan, the Colorado Supreme Court determined that a unit operator had the power to raise these claims and that their failure to do so does not

---

[4] The Committee does not address why it did not challenge Kinder Morgan's attempt to collect an allegedly improper assessment against it that it says only Kinder Morgan was responsible for paying.

negate satisfaction of the procedural requirements."[5] *CO2 Comm., Inc.*, 2024 WL 3520711, at \*5 (citing *Liebhardt v. Dep't of Revenue*, 229 P.2d 655, 657 (Colo. 1951) ("The statute affords the taxpayer a plain, speedy, and adequate remedy and full opportunity to be heard. Failure to exhaust the statutory remedies afforded the taxpayer, constitutes a waiver of such objections which cannot now be asserted." (ellipses omitted))).

The Committee next alleges that it was entitled to, and did not receive, "a full hearing and judicial determination" and thus there was no "plain, speedy, and efficient" remedy in state court. The entitlement to a "full hearing and judicial determination" refers to the procedural process afforded, not the substantive outcome delivered by the state courts. *Cities Serv. Gas Co.*, 656 F.2d at 587 (citing *Rosewell v. LaSalle Nat'l Bank*, 450 U.S. 503 (1981)).

In *Rosewell,* the "plaintiff received no substantive relief in the state court," but "[t]he Supreme Court held, nevertheless, that federal jurisdiction was barred" under the TIA. *Cities Serv. Gas Co.*, 656 F.2d at

---

[5] Moreover, Kinder Morgan argued repeatedly in the state proceedings that the Committee and other individual interest owners in the McElmo Dome Unit were the actual taxpayers and were not "related parties" to the Cortez Pipeline. *See, e.g., CO2 Committee, Inc. v. Montezuma County*, No. 2018CV30100, 2019 WL 13276776, at \*7 (Colo. Dist. Ct. June 11, 2019).

10

587. The dissent in *Rosewell* "focused on the inadequacy of the state remedy because of the substance of that remedy." *Id.* "The majority, however, disagreed, and concluded that if minimal procedural remedies are available for the taxpayer to challenge the validity of the tax the federal court must abstain." *Id.; see also Folio v. City of Clarksburg*, 134 F.3d 1211, 1215 (4th Cir. 1998) (agreeing that "the [TIA] does not guarantee that the substantive relief sought by the taxpayer be certain or even likely").

The Committee insists that the TIA does not apply here because its case was dismissed for lack of standing. But the TIA "prohibit[s] federal court jurisdiction where a procedural remedy as opposed to a substantive remedy was available in the state court. Thus, it is not up to the court in which [the TIA] is applied or is brought into play to evaluate the strength of the remedy which is available." *Cities Serv. Gas Co.*, 656 F.2d at 587.

Moreover, even if the Committee cannot sue the County to contest the tax assessment levied against its unit operator, it may not be completely left out in the cold. Again, the Colorado tax statutes applicable to oil and gas leasehold and lands requires the unit operator to file the Annual Statement with the County. *Colorado Prop. Tax Adm'r*, 527 P.3d at 373 (citing Colo. Rev. Stat. § 39-7-101(1) (2022)). When taxes are assessed by the County, unit operators are responsible for collecting these taxes from all the nonoperating fractional interest owners and then paying the total

11

amount owed to the County. *Id.* at 374 (citing Colo. Rev. Stat. § 39-10-106(2)). Given this statutory framework, the Committee pays Kinder Morgan, not the County. Thus, we see nothing from the state proceedings that would foreclose the Committee from seeking relief against the party who collected the tax payment from it (as in, Kinder Morgan, not the County). Nor does the Committee make any attempt to show why this potential remedy would be insufficient. *Salzer v. SSM Health Care of Oklahoma Inc.*, 762 F.3d 1130, 1134 (10th Cir. 2014) ("The party invoking federal jurisdiction has the burden to establish that it is proper, and 'there is a presumption against its existence.'") (citation omitted).

*Rosewell* commands that principles of federalism must underlie our application of the TIA. *See* 450 U.S. at 522. With that in mind, we also recognize that sound policy supports the legal rationale behind the district court's dismissal of this case under the TIA. The Committee's position has virtually no limiting principle. If the Committee's lawsuit were to proceed in federal court, every fractional interest owner (no matter how small of a stake it holds) would be empowered to file a federal lawsuit and challenge the state taxes assessed on its unit operator, even though they are not listed on the Annual Statement, are not taxpayers under Colorado law, and likely could not have been easily notified or even located by county tax assessors. *See id.* at 527–28 (cautioning "how ominous would be the potential for havoc

12

should federal injunctive relief be widely available" for challenges to state law taxes). That, in turn, could fracture Colorado's (and its counties') tax system, undermining state and county revenue and operations. *See id.* at 522 (explaining that "the principal motivating force behind the [TIA]" was "to limit drastically federal district court jurisdiction to interfere with so important a local concern as the collection of taxes").

For all these reasons, we affirm the district court's ruling that the TIA bars the Committee's challenge.

**B**

We next reach the argument that the district court erred by failing to construe all allegations in the complaint as true, as a facial attack to subject matter jurisdiction requires. This argument distorts the legal standard for a motion to dismiss. Generally, "[i]n addressing a facial attack, the district court must accept the allegations in the complaint as true." *Peterson v. Martinez*, 707 F.3d 1197, 1205 (10th Cir. 2013) (quoting *E.F.W. v. St. Stephen's Indian High Sch.*, 264 F.3d 1297, 1303 (10th Cir. 2001)). But that rule applies only to "well-pled factual allegations." *Id.* at 1206. "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

13

The Committee directs us to two allegations in its complaint that it insists are factual: that (1) "Colorado's courts had denied standing to the Committee to challenge state law taxes," and (2) "the TIA could not bar its claims because, as documented by case law, there was no plain, speedy and efficient remedy for the Committee in Colorado's courts." Op. Br. at 39.

On the first allegation, this is the holding of the Colorado Supreme Court's decision against the Committee. No one, including the Committee or the district court in its order, disputes that the Colorado Supreme Court ruled that the Committee lacked standing. *See* Reply Br. at 9 ("The Colorado Supreme Court decided that the Committee lacks standing to challenge the County's retroactive assessment of increased property taxes." (citing *Colorado Prop. Tax Adm'r*, 527 P.3d at 380)).

On the second allegation, that the Committee allegedly lacked a "plain, speedy[,] and efficient" remedy under state law, this is a legal conclusion. *See Rosewell*, 450 U.S. at 505 (framing this question as an issue of law). As a result, the district court was not required to accept it as true. *Iqbal*, 556 U.S. at 678; *see also Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (same).

We therefore find no error in the district court's analysis of the facial attack on the complaint regarding lack of subject matter jurisdiction.

**AFFIRMED**.

Entered for the Court

Richard E.N. Federico
Circuit Judge